UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-81206-CIV-MARRA/JOHNSON

CHRISTOPHER JOSEPH, ANA DAURO
and others similarly situated,

Plaintiff,

vs.

FAMILY PRESERVATION SERVICES OF
FLORIDA, INC.,

Defendant.
_____/

**OPINION AND ORDER**

This cause is before the Court upon Plaintiffs' Motion for Authorization to Send Notice to Similarly Situated Persons (DE 29). The motion is fully briefed and ripe for review. The Court has carefully considered the motion and is otherwise fully advised in the premises.

I. Background

Plaintiffs Christopher Joseph and Ana Dauro ("Plaintiffs"), former employees of Defendant Family Preservation Services of Florida, Inc. ("Defendant"), worked for Defendant as case managers. (Compl. ¶ ¶ 5, 6, 10.) Plaintiffs bring a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), on "behalf of themselves and all other similarly situated case managers employed by Defendant." (Compl. ¶ ¶ 3, 7.) In support of this motion, Plaintiffs have filed their own declarations as well as the declarations of five other case managers who worked for Defendant (hereinafter, "the seven case managers"). (See DE 30-1-6 and DE 31.) In addition, Andre Taylor, Stephanie Diedonne, Tiffany Hollis-Cole, Cheryl D. Stewart, Shaquanti Williams, Dwanne Clayton, Chris Joseph, Adelle Dorsainrre, Bobade Afolabi,

Vivenne Owen and Shavon Rahming have filed Notices of Consent to Join as Party Plaintiffs. (DE 9, 17, 24, 28, 32, 41, 44.)

Defendant is a subcontractor working in partnership with the Department of Children and Families ("DCF") to provide child protective and foster care services to children and families in Florida. (Compl. ¶ 15; Nicole Cunzo Decl. ¶ 3, DE 30-1; Ana Dauro Decl. ¶ 3, DE 30-2; Robin Johnson Decl. ¶ 3, DE 30-3; Christopher Joseph Decl. ¶ 3, DE 30-4; Kehan Rahming Decl. ¶ 3, DE 30-5; Neisha Wood Decl. ¶ 3, DE 30-6; Cristina Dauro Decl. ¶ 3, DE 31; Christopher Card Aff. ¶¶ 2-3, DE 35-1)  Defendant is a for-profit corporation and is wholly-owned by Providence Service Corporation and has offices in West Palm Beach, Fort Pierce, Arcadia, Gainesville, Okeechobee, Sarasota, Ft. Myers, Immokalee, Tampa, Naples, Labelle, and Daytona Beach, Florida. (Articles of Incorporation, Ex. C, DE 29-3; Providence Service Corporation Webpage, Ex. D, 29-4.)

The seven case managers worked for Defendant during the period of time ranging from 2006 to 2010.[1]  Their primary duties involved keeping the children they served safe and preventing their abuse and neglect.  The case managers' responsibilities included interviewing, observing, monitoring and assessing the safety of families and children. (Cunzo Decl. ¶ 4; A. Dauro Decl. ¶ 5; Johnson Decl. ¶ 5; Joseph Decl. ¶ 4; Rahming Decl. ¶ 4; Wood Decl. ¶ 4; C.

---

[1] The specific dates of employment are as follows:  Nicole Cunzo (November 2007 to mid-September 2008) (Cunzo Decl. ¶ 2); Ana Dauro (July 13, 2006 to January 14, 2010) (A. Dauro Decl. ¶ 2); Robin Johnson (May 9, 2007 to September 3, 2007 and October 15, 2007 to June 30, 2010) (Johnson Decl. ¶ 3); Christopher Joseph (October 6, 2008 to April 9, 2010) (Joseph Decl. ¶ 2); Kehan Rahming (June 30, 2006 to June 30, 2010) (Rahming Decl. ¶ 2); Niesha Wood (January 1, 2007 to March 20, 2010) (Wood Decl. ¶ 2) and Cristina Daura (January 1, 2006 to October 1, 2008 and September 15, 2009 to January 31, 2010 as a case manager and February 1, 2010 to December 31, 2010 as a supervisor) (C. Daura Decl. ¶ 2).

Dauro Decl. ¶ 4.) All seven case managers were paid a salary and regularly worked in excess of 40 hours per week, and Defendant did not compensate them for the hours worked in excess of 40 hours per week.[2] (Cunzo Decl. ¶ 6; A. Dauro Decl. ¶ 7; Johnson Decl. ¶ 7; Joseph Decl. ¶ 6; Rahming Decl. ¶ 6; Wood Decl. ¶ 6; C. Dauro Decl. ¶ 6.) Each of the seven case managers attach to their declarations a job description created by Defendant for the case manager position. While the job description provides an accurate description of their job duties, the seven case managers aver that Defendant did not adhere to the description of the educational and minimum requirements for the position in many instances. (Cunzo Decl. ¶ 3; A. Dauro Decl. ¶ 4; Johnson Decl. ¶ 4; Joseph Decl. ¶ 3; Rahming Decl. ¶ 3; Wood Decl. ¶ 3; C. Dauro Decl. ¶ 3.) Each case manager also avers that all of their co-workers who were employed as case managers performed the same duties and had the same responsibilities. (Cunzo Decl. ¶ 5; A. Dauro Decl. ¶ 6; Johnson Decl. ¶ 6; Joseph Decl. ¶ 5; Rahming Decl. ¶ 5; Wood Decl. ¶ 5; C. Dauro Decl. ¶ 5.) Lastly, the seven case managers state that they believe other individuals that are or were employed as case managers would join this case if they knew about it. (Cunzo Decl. ¶ 8; A. Dauro Decl. ¶ 8; Johnson Decl. ¶ 8; Joseph Decl. ¶ 8; Rahming Decl. ¶ 8; Wood Decl. ¶ 8; C. Dauro Decl. ¶ 8.)

In opposing this motion, Defendant has provided the affidavit of Chris Card, the South Region Vice President for Providence Services Corporation. Mr. Card states that Defendant currently provides its services pursuant to contracts in place with four different "lead agencies" that have contracted with DCF. (Card Aff. ¶ 2.) During the period of time at issue in this litigation, Defendant had contracts with five different lead agencies and provided services in five

---

[2] Johnson, Joseph and Rahming state that on or around March or April 2010 Defendant changed its pay practices and began to pay overtime. (Johnson Decl. ¶ 7; Joseph Decl. ¶ 6; Rahming Decl. ¶ 6.)

different geographical areas.  The lead agency established the salaries and the number of staff at a particular location, and no two contracts were identical.  In fact, each imposed different workplace restrictions, rules and regulations. (Card Aff. ¶ 3.)

Mr. Card states that Plaintiffs were case managers working under two contracts that Defendant had with two different lead agencies, one in Palm Beach County (with offices in Belle Glade and Rivera Beach) and one in St. Lucie County (with an office in Fort Pierce). (Card Aff. ¶ 4.)  The seven case managers and other potential opt-in plaintiffs were employed by Defendant at the offices in Fort Pierce, Riviera Beach and Belle Glade. (Card Aff. ¶ 6.)  Mr. Card avers that case managers "in each region have different employment conditions and pay provisions" and "because the contracts vary significantly by region and Lead Agency, case managers have no reason to interact with case managers from other regions and are unaware of others' job requirements." (Card Aff. ¶ 10.)

With respect to the job description, Mr. Card notes that the job description states, "The list of responsibilities is not intended to be exhaustive. [Defendant] reserved the right to revise this position description as needed to comply with actual job requirements." In addition, Mr. Card states that "other duties are frequently assigned and the changes are so significant that employees no longer regard themselves as 'traditional' or 'regular' case managers." (Card Aff. ¶ 18.)  For example, a number of Defendant's employees who are referred to as case managers work as specialists, whose job duties and rates of compensation are different from those of traditional case managers.  Mr. Card also attests that not all regions have specialists. (Card Aff. ¶ 16.)  There are also case managers classified as "lead case managers" in the Fort Pierce office, but not in the Palm Beach County offices.  These managers have significant responsibilities, such

4

as mentoring, training and handling complex cases. (Card Aff. ¶ 17.)  Finally, it is Mr. Card's belief that "virtually everyone who was ever employed as a case manager in the privatized foster care system in the State of Florida is aware of the various collection actions attempted by the attorneys representing the Plaintiffs in this action." (Card. Aff. ¶ 20.)

In moving for a conditional certification, Plaintiffs contend that the class is "similarly situated" based on their performance of similar work and the fact that they were salaried. Defendant responds that all the claims in this case are now moot by virtue of it having made an offer of full relief to the named Plaintiffs as well as the individuals who filed notices of consent to join the case.  Alternatively, Defendant asserts that Plaintiffs' evidence of potential opt-in Plaintiffs who want to join the lawsuit is lacking.  Specifically, Defendant states that Plaintiffs have not provided evidence of any past or current case managers from outside of Palm Beach County or the Fort Pierce office who wish to join this case. Lastly, Defendant also claims that its different offices were governed under different contracts that necessarily varied the work assignments and responsibilities based on location.

II.  Discussion

A.  Mootness

Defendant seeks to have this Court make a finding that this case has been rendered moot by virtue of it having offered full relief on March 8, 2011 to the two named Plaintiffs and all individuals who filed notices of consent to join in this action.  According to Defendant, by having made a full offer pursuant to the Rule 68 of the Federal Rules of Civil Procedure, the claims of those individuals have become moot and there is no longer a case or controversy. Therefore, the Court lacks jurisdiction and the case must be dismissed.

Plaintiffs, however, challenge Defendant's claim that they have received full offers of relief. Plaintiffs point out that the offer was never filed with the Court and the only information about the offer consists of representations by Defendant's attorney. In addition, Plaintiffs have provided eleven declarations from the seven case managers and other potential opt-in individuals stating that the offer of judgment is short of full relief. (DE 40-1-40-11.)

A review of the record shows Defendant has provided no evidence to support its assertion that it made an offer of full relief to Plaintiffs and the potential opt-in parties. In contrast, Plaintiffs have provided sworn declarations stating they have not received full relief. Given that Defendant has not provided any evidence to support its claim that Plaintiffs' claims are moot, and Plaintiffs have provided evidence to the contrary, the Court is unable to deny Plaintiff's motion on the basis of mootness. If Defendant has made an offer to Plaintiffs that it believes moots this action, Defendant may file a motion to dismiss for lack of subject-matter jurisdiction and support that motion with record evidence. The Court will defer its discussion of the legal principles surrounding these issues until such a motion is before the Court.

B.  Conditional Certification

The FLSA provides that an action for overtime compensation "may be maintained . . . by any one or more employees for and in behalf of himself or themselves *and other employees similarly situated*." 29 U.S.C. § 216(b) (emphasis added). The United States Court of Appeals for the Eleventh Circuit has outlined a two-tiered procedure to guide district courts in deciding whether plaintiffs are "similarly situated" for purposes of class certification under § 216(b). Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1217 (11th Cir. 2001); see Cameron-Grant v. Maxim Healthcare Servs., Inc., 347 F.3d 1240, 1243 (11th Cir. 2003) ( "Hipp outlined a

6

two-tiered procedure that district courts should use in certifying collective actions under § 216(b) . . . "). At the "notice stage" of the two-tiered procedure, a court's determination is "usually based only on the pleadings and any affidavits which have been submitted." Hipp, 252 F.3d at 1218 (quoting Mooney v. Aramco Servs., Co., 54 F.3d 1207, 1213-14 (5th Cir.1995)). "Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class." Id. In addition, before certifying an action as a collective action under § 216(b), the district court "should satisfy itself that there are other employees of the department-employer who desire to 'opt-in'. . . ." Dybach v. State of Florida Dep't of Corrections, 942 F.2d 1562, 1567-68 (11th Cir.1991). The second stage of the two-tiered procedure usually occurs at the end of discovery upon the defendant's motion for decertification of the class. Hipp, 252 F.3d at 1218. At the second stage, the court has much more information on which to base its decision and makes a factual determination on the similarly situated question. Id.

 Following the Eleventh Circuit's directive, this Court will consider the request for court-supervised notification under the first stage of the two-tiered procedure outlined in Hipp. Hence, the Court will look to the pleadings and affidavits on record to determine whether there are substantial allegations showing that the named Plaintiffs are similarly situated to the putative class members. In addition, the Court will determine whether there is evidence in the record indicating that other individuals wish to join this lawsuit.

 Plaintiffs' evidence is sufficient to satisfy the first tier analysis articulated in Hipp and warrants a conditional certification of a representative class. All seven case managers had the same primary duties and responsibilities of keeping the children they served safe and preventing

their abuse and neglect. In addition, they all allege that they were paid a salary and regularly worked in excess of 40 hours per week, but Defendant did not compensate them for the hours worked in excess of 40 hours per week. Significantly, they also allege that they believe other individuals that are or were employed as case managers would join this case if they knew about it. See Reyes v. Carnival Corp., No. 04-21861-CIV, 2005 WL 4891058, at * 6 (S.D. Fla. May 25, 2005) (affidavits based on personal knowledge, observation and experience provide a sufficient basis to infer that others were treated similarly). Moreover, the approximately 16 opt-in plaintiffs who have joined this lawsuit demonstrate the sufficiency of interest of other employees in this proceeding. See Barron v. Henry County School System, 242 F. Supp. 2d 1096, 1101 (M.D. Ala. 2003) (relying on already filed consents to suit evidence that others desire to participate in this suit); see also Riddle v. Suntrust Bank, No. 1:08-CV-1411-RWS, 2009 WL 3148768, at *3 (N.D. Ga. 2009) (three opt-in plaintiffs sufficient to conditionally certify a class). Thus, the Court finds that the Complaint, in conjunction with the declarations, present adequate evidence that others desire to join this action. Reyes, 2005 WL 4891058, at * 6; see also Guerra v. Big Johnson Concrete Pumping, Inc., No. 05-14237-CIV, 2006 WL 2290512, at * 4 (S.D. Fla. May 17, 2006) (the affidavit of at least one other co-worker raises the plaintiff's contention that others desire to join the suit beyond mere speculation).

Defendant's argument in opposition, namely that Plaintiffs have ignored the significant differences in the case manager position by region and that there are numerous specialists performing significantly different jobs, is unpersuasive. In making that assertion, Defendant states it had entered into different contracts with five different lead agencies and provided services in five different geographical areas. Moreover, Defendant contends that each contract

8

imposed different workplace restrictions, rules and regulations.[3]  These contracts, however, do not rebut Plaintiffs' evidence.  For this reason, the Court does not accept Defendant's assertion that Plaintiffs' "reliance on the written job description" is misplaced and the job description fails to "note the differences in the wide variety of assignments and requirements that may fall under the 'case manager' job description." (Resp. at 15 n.9.)  Moreover, engaging in this inquiry requires the Court to indulge in a detailed fact finding determination on the merits, which is improper at this stage of the litigation. See Carmody v. Florida Center For Recovery, Inc., No. 05-14295-CIV, 2006 WL 3666964, at *4 (S.D. Fla. 2006); see also Leuthold v. Destination America, 224 F.R.D. 462, 468 (N.D. Cal. 2004) ("Defendants' arguments in their opposition brief focus on the more stringent second tier analysis and raise issues that may be more appropriately addressed on a motion for decertification after notice is given to the proposed class."); Brown v. Money Tree Mortgage, Inc., 222 F.R.D. 676, 682 (D. Kan. 2004) ("[T]he court will examine the individual plaintiffs' disparate factual and employment settings, as well as the various defenses available to the defendant which appear to be individual to each plaintiff, during the 'second stage' analysis after the close of discovery."). Lastly, in the absence of any evidence that the case managers in different areas of the state of Florida are treated differently, the Court will not exclude, at this early stage, any Florida case managers.  See Henderson v. Holiday CVS, LLC, No. 09-80909-CIV, 2010 WL 1854111, at * 3 (S.D. Fla. May 11, 2010) ("while most Florida CVS stores are in 'Area 12,' in the absence of the presentation of evidence that the 'Area 8' Assistant Managers are treated differently, the Court will not exclude, at this early stage, the Assistant Managers from the Florida CVS stores in 'Area 8'").

---

[3] These contracts can be found at docket entries 46-47 and 49-59.

9

In sum, the declarations, notices of consent to join, and other record evidence submitted in this stage of the litigation satisfy the first stage of the Hipp two-tiered procedure by demonstrating the existence of similarly situated employees who may desire to opt into this action. Hence, the Court is satisfied that notice to potential opt-in class members is appropriate in this case.

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1) Plaintiffs' Motion for Authorization to Send Notice to Similarly Situated Persons (DE 29) is **GRANTED**.

2) The Court will allow notice to and opportunity to opt-in to the following collective class:

   **All case managers who were employed by Defendant, Family Preservation Services of Florida, Inc., within the three (3) year period from consenting to be included in this collective action**.

3) The parties shall confer and attempt to agree to a proposed notice to the collective class members and shall file it on the docket within ten (10) days of the date of this Order. The Court instructs the parties to confer and make every attempt to reach a consensus on the language of the notice prior to requesting Court intervention. If the parties are unable to agree on a proposed notice, Plaintiffs shall file a motion for approval of their proposed notice within five (5) days of the deadline for the joint proposed notice and Defendants shall file a response to Plaintiffs' proposed notice within five (5) days of service.

4) All scheduling deadlines memorialized in the Court's November 10, 2010

Scheduling Order (DE 27) remain in effect.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 10th day of May, 2011.

_____
KENNETH A. MARRA
United States District Judge